# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00780-CR

**Aubrey Lubojasky, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-09-600001, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Aubrey Lubojasky was convicted by a jury of one count of continuous sexual abuse of a young child and two counts of indecency with a child by exposure. *See* Tex. Penal Code Ann. §§ 21.02, 21.11(a)(2) (West 2011). The jury assessed his punishment at 60 years' imprisonment for the continuous-sexual-abuse count and ten years' imprisonment for each of the indecency counts. *See id.* §§ 12.34, 21.02(h) (West 2011). On appeal, appellant complains about the exclusion of evidence of a prior false accusation of sexual abuse made by the victim's mother, the exclusion of evidence showing alternative sources for the victim's sexual knowledge, the admission of expert psychological testimony, the admission of hearsay statements of the victim and her mother, and the admission of pornographic digital evidence in the punishment phase. For the reasons that follow, we affirm the judgments of conviction.

## BACKGROUND

The jury heard evidence that appellant was Rene's fiancé and had been living with Rene and her three children in her two bedroom apartment for about two years.[1] On the morning of January 13, 2009, just after 7:00, Rene walked into her living room where she observed appellant sitting next to her eight-year old daughter, J.B., who was lying down on the pull-out couch.[2] At her interruption, appellant jumped up but did not turn to face her. At this point, Rene saw her daughter sit up, reach beside her, grab her panties, and pull her knees to her stomach to put them on. Rene then saw her Kodak digital camera in appellant's hand. According to Rene, appellant told her "it's not what you think" and explained that he was just helping J.B. get dressed for school. It was unusual for appellant to help J.B. to dress and Rene did not see any of J.B.'s school clothes in the living room. Further, when Rene requested the camera from appellant he refused to give it to her and walked out of the house with it.

Rene questioned her daughter about what happened. J.B. told her that appellant had been taking pictures of her. J.B. also revealed that appellant had touched her and disclosed that this was not the first time. Rene immediately told J.B. to dress so she could take her to the doctor. Appellant accompanied them to the pediatrician's office.[3] J.B.'s pediatrician testified at trial. She

---

[1] In order to protect the identity of the child victim in this case and avoid confusion, we refer to the victim using only her initials and refer to her mother, who shares the victim's last name, by her first name.

[2] The record reflects that the couch in question pulled out into a full-size bed. Rene testified that it was not unusual for J.B. to sleep in the couch bed because she would fall asleep watching a movie.

[3] The evidence about why appellant accompanied them is disputed. Rene testified that it was at her insistence, but appellant testified that it was his idea to take J.B. to the doctor.

said that she saw J.B. and her mother at approximately 8:30 that morning, briefly discussed what had happened with them, but did not examine J.B. Instead, she referred J.B. and her mother to Dell Children's Medical Center for a sexual assault exam. The doctor notified the children's hospital that Rene and J.B. were on the way and called the police to report the sexual abuse of J.B.

A sexual assault nurse examiner (SANE) at Dell examined J.B. The nurse noticed redness and tenderness on J.B.'s labia minora, but noted no acute trauma. She testified at trial that these findings were not inconsistent with a sexual assault as there is rarely physical evidence of trauma in these types of cases. The nurse did not detect any secretions, such as semen, during the exam but obtained evidentiary samples for testing. A DNA forensic scientist testified at trial that a small amount of male DNA was detected on J.B.'s vaginal swab and dried secretion vaginal debris swab. Additional DNA testing yielded a partial DNA profile from the vaginal swab. Appellant could not be excluded as a contributor to this DNA.

After the exam at the hospital, the police asked Rene to take J.B. to the children's advocacy center so J.B. could be interviewed by a forensic interviewer. At trial, the forensic interviewer testified that J.B. told him that she was there because her dad, referring to appellant, was "wiggling" his "private part" in front of her. J.B. identified the "private part" with the name "weiner" and explained that it is the body part used to go to the bathroom and "pee" comes out of it. She also demonstrated the "wiggling" motion by moving her hand back and forth on the arm of a chair.[4] J.B. also told the interviewer that appellant was videotaping with a camera—a grey camera

---

[4] The record reflects that the forensic interviewer demonstrated for the jury the motion that J.B. showed him of how appellant "wiggled" his "private part."

3

with the name "Kodak" on it—while he was wiggling his private part in front of her. She told him that the incident happened that morning while they were on the "couch bed." She said that appellant jumped when her mom walked in the room. J.B. reported that such activity had been happening "for a very long time."

She told the interviewer that the first time was when she was seven years old and in the second grade.[5] She described appellant pulling down his pants, putting her on top of him, putting his private part inside her private part, and moving her body back and forth with his hands on her hips. She said that appellant put lotion that he got from the bathroom on his private part to make it go inside her private part. J.B. also told the interviewer that appellant made her put her mouth on his private part and that he put "stuff" on it "like marshmallows and cream." She reported that "stuff" came out of his "wiener" the time she put her mouth on it and got on her clothes. The interviewer testified that J.B. said that appellant recorded her many times and put the recordings on the computer. She told him that all the abuse happened after school except the wiggling incident that morning. She indicated that the abuse had been going on through the winter. J.B. said that appellant had told her not to tell because he did not want anybody to know what happened.

After leaving the children's advocacy center, Rene returned home where she met law enforcement officers and consented to a search of the apartment. The police photographed the apartment and the couch bed where Rene caught appellant with her daughter and searched the

---

[5] The record reflects that J.B.'s date of birth is December 20, 2000. On the date of the interview, January 13, 2009, she told the forensic interviewer that she was eight years old and in the second grade.

apartment for physical evidence. They removed several items which were later processed by forensic analysts, including the Kodak camera appellant had in his hand when Rene discovered him with J.B.[6]

A computer forensics analyst testified about the forensic examination he performed on the Kodak camera. Using specialized software, the analyst accessed two videos that had been deleted from the memory card in the camera. Based on time stamp comparisons, the analyst testified that these videos were created the morning of January 13, 2009, approximately five seconds apart. These videos showed the body of a slight, prepubescent white female, similar to the build of J.B. They also showed a man's exposed penis and the child's sexual organ. There was an adult male hand in the videos wearing a linked men's bracelet with alternating black and silver colors, consistent with a bracelet taken from appellant by law enforcement on his arrest. One of the detectives who had searched the apartment testified that the bedding in the videos, including red and blue pillows, was consistent with the bedding taken from the couch bed in the apartment where the appellant lived and shown in several of the photographs of the apartment.

J.B. testified at trial consistently with the information she had conveyed to her mother, her pediatrician, the SANE nurse, and the forensic interviewer at the child advocacy center. She testified that appellant, whom she called "daddy," "had sex with [her]," meaning that "he got on top of [her] and started going back and forth." Sometimes she had clothes on and sometimes she did not. J.B. testified that sometimes they sat up facing each other with her legs on the outside and appellant's hands on her hips. She described seeing appellant's "private part" and indicated that it

---

[6] The record reflects that after his initial refusal to give Rene the camera, appellant returned it to her when he came back inside the house before they took J.B. to the doctor.

had touched her "private part" and went inside her "private part." The record reflects that J.B. demonstrated the difference between inside and outside using a Kleenex box. She said it felt "hurtful" to her body and "heartbroken" to her emotions when appellant put his private part inside her private part.

J.B. told the jury that the abuse happened more than one time and by the time her mother found out in January 2009, it had been happening for "a very long time." Her testimony indicated that the abuse started before Halloween because she remembered pumpkin decorations and pumpkin lights decorating the apartment when it first happened. The abuse took place in the living room of her house while her mom was at school and her brothers were playing in their room.[7] While appellant was with J.B., her brothers were not allowed to come out of their room. J.B. testified that appellant would give her special treats after he had sex with her, such as candy, ice cream, or a drink, and told her not to tell anybody about the abuse. J.B. testified that on the morning of January 13, 2009, appellant was "shaking" his "private" in front of her and taking pictures of that. She said that he had taken "bad pictures" of her before. When her mother walked in and found her, J.B. was "scared, worried, and happy"—happy because she "wouldn't have to live with it anymore."

Appellant testified at trial. He said that he "loved [J.B.] as [his] own daughter" and that he had a daughter the same age. He denied ever touching J.B. and said there was "no way possible [he] could ever do that to a child." After initially testifying that he never used the camera or the computer in the apartment, he conceded on cross-examination that he occasionally used both.

---

[7] Rene testified that she was taking classes full time in the evening and was gone three to four evenings a week.

6

Appellant testified that on the morning of January 13, 2009, he awoke to Rene yelling at the children to get ready for school. He said that J.B. was moving slowly, so he helped her get dressed. He said that when Rene entered the living room, J.B. was wearing her jeans and a t-shirt, but Rene began making accusations. He said that after accompanying Rene and J.B. to the pediatrician's office, he left Dell Children's Hospital on foot because he got fed up with the accusations being made against him. Appellant opined that Rene "put [J.B.] up to this . . . to punish [him] for leaving her or pay her [sic] back for whatever she felt [he] did wrong against her, not being faithful, leaving her and never coming back to her." He told the jury that Rene was capable of setting him up—bribing J.B. to get her to tell lies about him and faking a video by getting a second bracelet and giving it to someone else to pretend to be him in the videos.

The jury convicted appellant of one count of continuous sexual abuse of a young child and two counts of indecency with a child by exposure.[8] During the punishment phase, the computer forensics analyst testified about additional digital evidence recovered from the desktop computer and electronic storage devices taken from the apartment. The jury assessed appellant's punishment at confinement for 60 years in the Institutional Division of the Texas Department of Criminal Justice

---

[8] Appellant was charged with the sexual abuse of J.B. in an eight-count indictment. Count one alleged the offense of continuous sexual abuse of a young child. Counts two through six alleged the offenses of aggravated sexual assault of a child and indecency with a child by sexual contact. These offenses were the underlying acts of sexual abuse contained in the continuous-sexual-abuse count. The final two counts alleged indecency with a child by exposure. The jury was instructed to proceed to consideration of the indecency-by-exposure counts if they found appellant guilty of continuous sexual abuse of a young child as alleged in count one. Following the court's instructions, the jury returned guilty verdicts on counts one, seven, and eight.

for the continuous-sexual-abuse-of-a-young-child count and ten years for each of the indecency counts. The trial court ordered the sentences to run concurrently. This appeal followed.

## DISCUSSION

In five points of error, appellant argues that the trial court erred by: (1) excluding evidence of a prior false allegation of sexual abuse made by J.B.'s mother, (2) excluding evidence of alternative sources for J.B.'s sexual knowledge, (3) admitting the expert testimony of a psychologist, (4) admitting hearsay statements of J.B. and her mother, and (5) during the punishment phase of trial, admitting pornographic digital evidence.

## Exclusion of Evidence

Appellant's first two points of error relate to the trial court's exclusion of evidence. In his first point of error, appellant contends the trial court erred by refusing his request to question Rene, J.B.'s mother, regarding prior false allegations against her ex-husband concerning his sexual abuse of her and her children. He contends that the trial court's limitation of his cross-examination of Rene denied him his constitutional right of confrontation and violated Rule 613(b) of the Texas Rules of Evidence. In his second point of error, appellant asserts that the trial court erred in excluding evidence demonstrating alternative sources for J.B.'s sexual knowledge. Appellant appears to argue that the exclusion of this evidence violated his constitutional right of confrontation and right to due process.

*Preservation of Error*

An appellate issue involving a proffer of evidence, as opposed to an objection, must still satisfy the preservation-of-error requirements. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (stating that purpose of requiring objection is to give trial court or opposing party opportunity to correct error or remove basis for objection and reasoning that "[a]though this case involves a proffer of evidence rather than an objection, the same rationale applies."). To preserve error regarding the exclusion of evidence, a party must not only tell the judge that the evidence is admissible, but must also explain why it is admissible. *Id.* at 177–79. Further, the explanation given at trial must match the one urged on appeal. *Id.* at 179. For example, an explanation for admissibility based upon the Rules of Evidence at trial does not preserve a claim on appeal that admission of the evidence is required by the Confrontation Clause. *Id.*

At trial, when appellant sought to question Rene about the alleged prior false sexual-abuse allegations, he merely indicated to the trial court that he "would also like to get into prior false accusations." At the time of his request he did not offer any legal basis for the admission of such evidence. Nor did he offer one after a subsequent offer of proof. This Court does not require certain "technical considerations or forms of words to preserve an error for appeal . . . ." *See Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009). Clear communication in plain English, rather than "hyper-technical or formalistic . . . words or phrases," is sufficient to preserve error. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex. Crim. App. 1992)). However, "it is not enough to tell the judge that [the] evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge

9

*why* the evidence was admissible." *Reyna*, 168 S.W.3d at 177 (emphasis added). Here appellant offered no basis for the admission of this testimony. He did not cite to any specific rules of evidence, case law, or constitutional provisions, state or federal, to support admission of the excluded testimony.

Yet, on appeal, appellant contends that he should have been allowed to question Rene pursuant to Rule 613(b) of the Texas Rules of Evidence. *See* Tex. R. Evid. 613(b) (permitting examination of witness concerning bias or interest). He further argues that the restriction on cross-examination violated his constitutional right of confrontation. *See* U.S. Const. amends. VI, XIV. At trial appellant did not request to proceed under Rule 613(b) or assert that the court's refusal to allow him to question Rene on this topic improperly limited his right to cross-examine the witness to expose bias or interest under that rule. Nor did appellant assert at trial that the limitation of cross-examination violated his constitutional right to confront witnesses. Accordingly, appellant did not preserve for appellate review his complaints regarding the exclusion of the evidence of prior false accusations of sexual abuse.

In addition, when the trial court refused to allow appellant to offer evidence of the purported alternative sources of J.B.'s sexual knowledge, appellant never argued that admission of the evidence was required by any constitutional provision. The only rationale for offering the evidence was that the State had "opened the door" to such evidence in its opening statement.[9] Appellant did not argue that either the Sixth or Fourteenth Amendment to the United States Constitution demanded admission of this evidence. Because appellant did not clearly articulate that

---

[9] Appellant does not make this argument on appeal.

10

these constitutional provisions supported admission of the testimony, the trial court never had the opportunity to rule on this rationale. Appellant did not do everything necessary to bring to the judge's attention the evidence rule or statute or constitutional provision in question and its precise and proper application to the evidence in question. *See Reyna*, 168 S.W.3d at 179; *see also Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (concluding defendant's constitutional right to confrontation and to present defense are subject to procedural default). Accordingly, appellant failed to preserve for appellate review his complaint regarding the exclusion of the evidence of alternative sources for the victim's sexual knowledge.

Nevertheless, even if error had been preserved, appellant's claims would fail.

*Standard of Review*

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S.Ct. 2966 (2011); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

11

*Prior False Accusation of Sexual Abuse*

In his first point of error, appellant argues that the trial judge erred in excluding evidence of a "prior false accusation" of sexual abuse during the cross-examination of Rene, J.B.'s mother. He maintains that the exclusion of this evidence violated his constitutional right to confrontation as well as Rule 613(b) of the Texas Rules of Evidence.

Prior to cross-examination of Rene, after the State passed her as a witness, appellant's counsel approached the bench pursuant to a motion in limine and expressed to the court that he "would like to get into prior false accusations." The court denied his request, finding no basis for the admission of such evidence, but allowed him to make an offer of proof at the conclusion of Rene's testimony. During the offer of proof, appellant's counsel proffered the following:

Q. And so far as your marriage to [J.B's biological father], did you -- when you were getting a divorce from him, did you accuse him of sexual assault of you or the children?[10]

A. During my divorce, did I accuse him?

Q. During any time. At any time have you accused [J.B's biological father] of any kind of sexual assault or inappropriate sexual behavior with you or the children?

A. Can you rephrase the question so I can understand it better, please?

Q. Well, did you accuse [J.B's biological father], your now ex-husband, of any inappropriate sexual behavior at any time?

A. Of my children?

---

[10] To protect the identity of the child victim in this case, we do not refer to her biological father by name as he shares the same last name. To avoid confusion, we do not use his initials because they are the same initials as the victim.

Q. I said of any inappropriate sexual behavior at any time?

A. Did I accuse him to him or to other people?

Q. To anyone.

A. I'm not really understanding the question, so. I have told [J.B's biological father] that even though we were married, that if I tell him no, that he is still raping me, but I've never told anybody else about it. We would argue about that. He would say, I'm not raping you, you're my wife. And I told him, no, if I tell you no, it is still considered rape, and the next time you do it, I will call the cops and that's where it stopped.

Q. Are you saying that you never accused him to anyone else of any kind of sexual abuse of you or your children?

A. That is correct.

Q. You never accused him of sexually abusing your daughter?

A. No.

Q. Or your son --

A. No.

Q. -- to anyone else?

A. No.

Q. Never?

A. Never.

Appellant maintains that he should have been allowed to ask the above questions to develop Rene's motive to falsely accuse him in this case. Conceding that such motive to falsely accuse would not be that of the victim but rather her mother, appellant nevertheless contends that because Rene was

13

the outcry witness, "her motivation to convince her daughter to falsely accuse him, demonstrated by her prior actions, was both relevant and admissible."

Except for criminal convictions, specific instances of conduct of a witness may not be used to impeach the witness's credibility, either on cross-examination or by extrinsic evidence. *See* Tex. R. Evid. 608(b); *Billodeau*, 277 S.W.3d at 39–40. Specific instances of conduct may, however, be used to establish a witness's bias or interest. *See* Tex. R. Evid. 613(b). The court of criminal appeals has observed that "there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals 'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.'" *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1973)); *see Dixon v. State*, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999) (op. on reh'g) ("Rule 608 addresses a witness's general character for truthfulness. Rule [613] addresses a witness's trustworthiness in the particular case because of some bias or interest.").

Further, while there is no per se exception to Rule 608(b) for sexual offenses, the Sixth Amendment guarantees the right of an accused to confront the witnesses against him, and the Confrontation Clause may occasionally require the admission of evidence that the rules of evidence would exclude. *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). Still, under the Confrontation Clause, a trial court maintains broad discretion to impose reasonable limits on cross-examination or impeachment to avoid harassment, prejudice, confusion, and the injection of cumulative or collateral evidence. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Lopez*, 18 S.W.3d at 222; *Delamora v. State*, 128 S.W.3d 344, 364 (Tex. App.—Austin 2004, pet. ref'd).

14

Thus, in deciding whether evidence must be admitted under the Confrontation Clause, it is necessary to balance the probative value of the evidence sought to be introduced against the risk that its admission may entail. *Lopez*, 18 S.W.3d at 222; *Delamora*, 128 S.W.3d at 365. In *Lopez v. State*, the court of criminal appeals held that because the evidence failed to show that the prior accusation was false or that the prior and current accusations were similar, the evidence failed to have any probative value in impeaching the complainant. 18 S.W.3d at 226.

In the present case, the trial court allowed defense counsel to make an offer of proof during which counsel questioned Rene about accusing her former husband of sexually abusing her and her children. While appellant asserts in his brief that Rene "admitted the accusations against her ex-husband," the record does not reflect such an admission. In fact, her testimony—the only evidence in the record relating to this purported prior accusation—contains a complete denial that such an accusation was ever made. Appellant presented no competent evidence that any such allegations were actually made. Further, even if we construe Rene's testimony as some sort of admission to making an accusation against her ex-husband, as appellant does, there is no evidence in the record that such an allegation, if made, was false. Thus, the evidence lacks probative value because appellant presented no evidence that any previous allegations of sexual abuse were actually false. *See id.* (requiring proof of falsity before evidence of prior abuse allegations can be probative).

Moreover, even if appellant had presented proof of falsity, he fails to demonstrate any similarity between the previous accusation of sexual abuse and the current allegations against appellant. Appellant presents no evidence linking the two allegations. Assuming the record shows such a prior allegation, the record shows only that the prior allegation by Rene and the current

15

allegations by J.B. were made.  Rene's accusation concerned sexual abuse against her by her former husband, whereas J.B.'s allegations concerned sexual abuse by appellant.  Unrelated allegations of sexual abuse to different victims by different perpetrators—particularly an allegation of forced nonconsensual sex with an adult woman and allegations of engaging in various sexual acts with a child—do not constitute a pattern of behavior sufficient to satisfy the similarity requirement identified in *Lopez*.  *See id.*  (complainant's prior accusation of physical abuse by mother and current allegation of sexual abuse by defendant did not have requisite similarity).

Appellant fails to meet the conditions set forth in *Lopez*.  There is no proof in the record that Rene's prior accusation of sexual abuse perpetrated by her ex-husband, if made, was both false and similar in nature to the offenses with which appellant was charged.  Accordingly, his Confrontation Clause challenge fails.

Concerning the alleged violation of Rule 613(b), while appellant asserts in his brief that the evidence of the prior false allegation should have been admitted to show Rene's bias against appellant as well as her motive to falsely accuse him and encourage her daughter to do likewise, he fails to explain how evidence of a prior false allegation concerning her ex-husband's sexual assault against her reveals her bias against appellant.  Nor does he explain how the prior accusation provides a motive to falsely accuse appellant of sexually abusing her daughter or encourage her daughter to falsely accuse him.  Appellant testified at trial that he told Rene that he was going to leave her and return to his ex-wife.  He asserts in his brief that this testimony provided a motive for Rene to falsely accuse appellant of sexually assaulting her daughter.  However, he fails to explain how Rene's purported false accusation against her ex-husband relates to this motive created by appellant's intent

16

to leave. There is no evidence in the record suggesting that Rene's purported accusation against her former husband resulted from her husband's leaving or threatening to leave her. Contrary to appellant's assertion, the proffered testimony here does not show a bias against him or a motive to falsely accuse him. Rather, it constitutes an impermissible attack on Rene's general credibility using specific instances of conduct. We discern no violation of Rule 613(b).

For the foregoing reasons, we hold that the trial court did not abuse its discretion in excluding the evidence of Rene's purported prior false accusations of sexual abuse. We overrule appellant's first point of error.

*Alternative Sources of Sexual Knowledge*

In his second point of error, appellant argues that the trial court erred in excluding evidence demonstrating alternative sources for J.B.'s sexual knowledge. During trial, appellant sought to admit, through cross-examination of J.B.'s mother, evidence that J.B. had been exposed to a registered sex offender, that J.B. had been involved in "inappropriate sexual conduct" with another child, and that J.B.'s little brother had exposed himself to another child. He maintains that this evidence "of other exposures to inappropriate sexual conduct and actual sex offenders" would "explain her knowledge of sexual matters" and would have lessened the credibility of the victim stemming from her sexual knowledge. In his brief, appellant does not specifically argue a legal basis for the admission of the evidence, but suggests that the exclusion of this evidence violated his constitutional rights to confrontation and due process.

Contact with Registered Sex Offender

Rene testified during the offer of proof that for "a couple of weeks" in February 2010, more than a year after Rene walked in on appellant with her daughter, J.B. had "been around" a registered sex offender. There is nothing in the record describing the extent of the contact between J.B. and this man. Nor is there any evidence demonstrating that J.B. gleaned any type of sexual knowledge from him or from being around him. Appellant merely speculates that simple proximity to a registered sex offender may have imparted sexual knowledge to J.B.

Moreover, J.B.'s contact with the registered sex offender occurred well after the allegations in the instant case. Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401. If the evidence is not relevant, it is not admissible. *Id.* 402. In deciding whether evidence is relevant, a trial court should ask whether a reasonable person, with some experience in the real world, would believe the evidence is helpful in determining the truth or falsity of any fact that is of consequence to the case. *Hernandez v. State*, 327 S.W.3d 200, 206 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 376). Because the contact with this individual happened after the sexual abuse alleged in this case, the contact has no specific relevance to J.B.'s sexual knowledge before her relationship with appellant or her outcry of the abuse. *See Hernandez*, 327 S.W.3d at 206 (photograph of victim with boyfriend and caption with vague sexual content that was taken and posted on MySpace page after solicitation by appellant had no specific relevance to victim's knowledge of sexual terms before her encounter with appellant).

We conclude that this evidence does not demonstrate a relevant alternative source of sexual knowledge. Thus, the trial court did not abuse its discretion in refusing to admit it, and its exclusion did not violate appellant's constitutional rights. *See* Tex. R. Evid. 402 ("Evidence which is not relevant is inadmissible."); *see also Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd) (Constitution requires admission only of otherwise relevant and admissible evidence).

Prior Sexual Conduct of Victim

Appellant further complains about the exclusion of evidence that J.B. was involved in "inappropriate sexual conduct" with another child. During the offer of proof, Rene testified that on one occasion she observed appellant's daughter, M.L., on top of J.B. "humping" her. M.L. explained to Rene that she learned this behavior from videotapes her cousin had shown her. Rene further testified that on another occasion she observed M.L. under the bed asking J.B. to take off her clothes. Rene's testimony reflected that these incidents occurred during the summer of 2008.

The exclusion of a victim's prior sexual history has generally been held not to violate a defendant's confrontation and cross-examination rights. *See Allen v. State*, 700 S.W.2d 924, 930–31 (Tex. Crim. App. 1985) (recognizing that "[t]here have been numerous attacks upon the so-called rape shield statutes as violative of the Sixth Amendment and these generally have been rejected" because "'the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process'") (quoting *North Carolina v. Fortney*, 269 S.E.2d 110, 113 (N.C. 1980)). Rule 412(b) of the Texas Rules of Evidence provides that specific instances of a sexual-assault victim's past sexual conduct are inadmissible

19

unless (1) the evidence falls within one of five categories of evidence listed in the rule, and (2) the trial court finds that the probative value outweighs the danger of unfair prejudice. *See* Tex. R. Evid. 412(b)(2), (3). One of the exceptions listed in the rule is that the evidence is constitutionally required to be admitted. *Id.* 412(b)(2)(E). However, the Constitution requires only the admission of otherwise relevant and admissible evidence. *Hale*, 140 S.W.3d at 396. Thus, before evidence of an alleged victim's sexual behavior may be admitted under rule 412(b)(2)(E), the defendant must first establish the relevance of the evidence to a material issue in the case. *Id.*; *see* Tex. R. Evid. 401. If the evidence of the victim's prior sexual behavior is not relevant, it is properly excluded. *See* Tex. R. Evid. 402. To show the relevance of a child victim's prior sexual conduct as an alternate source of sexual knowledge, the defendant must establish that the prior acts clearly occurred and that the acts so closely resembled those of the present case that they could explain the victim's knowledge about the sexual matters in question. *Hale*, 140 S.W.3d at 396.

Here, the prior sexual behavior involved a seven-year-old girl "humping" J.B. while both girls were fully clothed and, on another occasion, that same child asking J.B. to remove her clothes. Other than J.B.'s involvement, there is no similarity between these incidents and the allegations against appellant in this case. Appellant fails to explain how, from these incidents with M.L., J.B. gained knowledge about the anatomy of an adult male, male masturbation, ejaculation, male-to-female genital contact, penile-vaginal sexual intercourse, or oral sex. Neither of these incidents explain J.B.'s ability to provide detailed descriptions of the sexual abuse alleged.

Appellant failed to establish the relevance of this evidence to a material issue in the case so as to justify admission of this evidence under Rule 412(b)(2)(E). He did not prove that the

20

acts so closely resembled the acts alleged against him that they could explain J.B.'s knowledge about the sexual matters in question. Accordingly, we conclude that this evidence was not relevant. The trial court did not abuse its discretion in refusing to admit it, and its exclusion did not violate appellant's constitutional rights. *See* Tex. R. Evid. 402; *see also Hernandez*, 327 S.W.3d at 206; *Hale*, 140 S.W.3d at 396.

Incident with Victim's Brother

During the offer of proof, Rene testified about a CPS investigation relating to an incident where J.B.'s younger brother, C.B., and another young boy "were in a closet looking at each other's private parts" when they were six or seven years old. She explained that CPS "ruled out the cases," finding that the parents responded to the incident appropriately and because that was normal behavior for boys in that age group. Her testimony does not reflect that J.B. was in any way involved in the incident.

Appellant complains about the exclusion of this evidence because it "shows a number of irregularities in the entire . . . household regarding the proper sexual behavior of prepubescent children" and inappropriate behavior by another of Rene's children. However, the evidence in the record reflects that this was not abnormal behavior on the part of C.B., but rather normal behavior for a child of that age. Moreover, appellant wholly fails to explain how an incident where C.B. and another young boy comparing "private parts"—an incident which did not involve J.B.—contributed to J.B.'s sexual knowledge. The record does not demonstrate that J.B. was even aware of the incident. Furthermore, little boys comparing private parts is not similar to the sexual acts charged against appellant. This evidence was simply not relevant. Therefore, we conclude that the trial court

did not abuse its discretion in refusing to admit it and its exclusion did not violate appellant's constitutional rights. *See* Tex. R. Evid. 402; *see also Hernandez*, 327 S.W.3d at 206; *Hale*, 140 S.W.3d 381, 396.

For the foregoing reasons, we hold that the trial court did not abuse its discretion in excluding the evidence of alleged alternative sources for J.B.'s sexual knowledge. We overrule appellant's second point of error.

## Expert Testimony

In his third point of error, appellant asserts that the trial court erred in admitting the testimony of William Lee Carter, a licensed psychologist, because there was no evidence of the scientific validity of his opinions regarding the dynamics of child sexual abuse.

### *Testimony of Dr. Carter*

During the guilt-innocence phase of trial, Dr. Carter testified, based on his education, training, and experience, about the dynamics of child sexual abuse. Dr. Carter had obtained bachelors, masters, and doctoral degrees in psychology, all from Baylor University. At the time of trial, Dr. Carter had been a licensed psychologist for 27 years and had specialized in the dynamics of child sexual abuse through work experience and training. At one point during his career, he assisted in the development of a program specifically for the treatment of sexual abuse victims. In addition, he has authored eight books, including a workbook for sexual abuse victims. Dr. Carter related that he was a member of various local, state, and national psychological associations and obtained a speciality certification in the area of psychological evaluation and assessment. He

testified that the sub-field of child sexual abuse dynamics is a subject well established in the field of psychology. He indicated that he had testified in court as an expert witness "a couple hundred times" in courtrooms across 15 to 20 Texas counties.

Dr. Carter's practice included the treatment of hundreds of victims of sexual abuse, children and teenagers. In addition, during the course of his career, he has conducted hundreds of psychological evaluations of sex offenders. Thus, the evidence demonstrated that he gained knowledge and experience regarding the dynamics of child sexual abuse from the perspective of both child victims as well as perpetrators.

Dr. Carter testified about the dynamics of child sexual abuse and several areas of concern related to the sexual assault of children: the process of disclosure of abuse by victims, also known as "outcry"; common psychological reactions to sexual abuse, including typical emotions experienced, behaviors exhibited, and coping or defense mechanisms employed; the relationship between perpetrators and victims that enables sexual abuse; victim selection by perpetrators; and conditioning or grooming practices associated with the sexual assault of children. His testimony addressed these issues in his answers to hypothetical questions based on trial evidence. Dr. Carter did not know J.B., her mother, or appellant.

*Standard of Review*

The admission of expert testimony is reviewed on appeal for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). A trial court's ruling on the admissibility of expert testimony will rarely be disturbed by an appellate court. *Vela v. State*, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006); *Rodgers v. State*, 205 S.W.3d 525, 527–28 n.9 (Tex.

23

Crim. App. 2006). As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing *Montgomery*, 810 S.W.2d at 380). If the record supports the trial court's decision on the admission of evidence, there is no abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379; *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd).

*Reliability of Dr. Carter's Opinions*

Pursuant to Rule 702, before admitting expert testimony, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Vela*, 209 S.W.3d at 131; *see also Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela*, 209 S.W.3d at 131. Reliability focuses on the subject matter of the witness's testimony. The proponent of the expert testimony must demonstrate by clear and convincing evidence that the expert testimony is reliable. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). The focus of the reliability analysis is to determine whether the evidence has its basis in sound scientific methodology such that testimony about "junk science" is weeded out. *Tillman*, 354 S.W.3d at 435; *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). When addressing fields of study outside the hard sciences, such as the social sciences or fields that are based primarily on experience and training as opposed to the scientific method, the requirement of

24

reliability still applies, but with less rigor than to the hard sciences. *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999); *Perez v. State*, 113 S.W.3d 819, 833 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008).

The field of psychology is a "soft science." *See Tillman*, 354 S.W.3d at 435; *Perez*, 113 S.W.3d at 833–34. Consequently, to establish its reliability, the proponent of expert testimony in that field must establish that: (1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies on or utilizes the principles involved in that field. *Tillman*, 354 S.W.3d at 435–36 (citing *Nenno*, 970 S.W.2d at 561); *Davis v. State*, 329 S.W.3d 798, 814–15 (Tex. Crim. App. 2010). This analysis is "'merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science.'"[11] *Tillman*, 354 S.W.3d at 435–36 (quoting *Nenno*, 970 S.W.2d at 561). The general principles announced in *Kelly* apply, but the specific factors outlined may or may not apply depending on the context. *Coble*, 330 S.W.3d at 273 (citing *Nenno*, 970 S.W.2d at 560). The methods of proving reliability in the soft sciences will vary, depending on the field of expertise. *Nenno*, 970 S.W.2d at 561; *Perez*, 113 S.W.3d at 833–34.

---

[11] In *Kelly v. State*, the court of criminal appeals outlined several factors that could affect a trial court's determination of reliability, including but not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

Psychology is a legitimate field of study. *See Tillman*, 354 S.W.3d at 436; *Perez*, 113 S.W.3d at 834. The subject of the dynamics of child sexual abuse is a legitimate subject within the field of psychology. *See Duckett v. State*, 797 S.W.2d 906, 917 (Tex. Crim. App. 1990), *overruled on other grounds by Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993) (expert testimony concerning child-sexual-abuse syndrome and applying elements of syndrome to facts of case was properly admitted); *cf. Nenno*, 970 S.W.2d at 562 (behavior of people who sexually victimize children is legitimate field of expertise); *Morris v. State*, 361 S.W.3d 649, 656 (Tex. Crim. App. 2011) (conditioning or grooming practices associated with sexual assault of children is legitimate field of study). Accordingly, courts have repeatedly upheld the admission of expert testimony concerning behavioral characteristics exhibited by children that have been empirically shown to be common among children who have been abused. *See Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); *DeLeon v. State*, 322 S.W.3d 375, 382–83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio 2008, pet. ref'd); *Perez*, 113 S.W.3d at 832.

Appellant complains that there was "no evidence provided that the methodology [Dr. Carter] used in this case is supported by independent research, books, journals, articles, or other psychologists." We find no requirement, however, that a field of expertise must specifically incorporate research, scientific study, or empirical data. *See, e.g.*, *Morris*, 361 S.W.3d at 656. Further, the expert testimony at issue here involved the field of psychology, a so-called "soft science" based primarily upon experience and training. *See State v. Medrano*, 127 S.W.3d 781, 785 (Tex. Crim. App. 2004) (citing *Nenno*, 970 S.W.2d at 561). Thus, rather than the "methodology used,"

26

the more appropriate inquiry is whether the testimony properly relied on or utilized the principles involved in the field of psychology. *See Tillman*, 354 S.W.3d at 435–36; *see also Nenno*, 970 S.W.2d at 562. All of the opinions offered by Dr. Carter were within the scope of the field of psychology. His opinions, founded on general psychological principles, were based on his extensive experience during the course of his career observing and treating hundreds of sexually abused children and evaluating hundreds of sex offenders, as well as his continuing education and specialized study in the area of child sexual abuse.

Appellant does not identify "principles involved in the field" of psychology that Dr. Carter's testimony failed to rely on or utilize. Instead, he relies on *Coble v. State* to support his position that there was "no evidence of scientific validity to any of Dr. Carter's opinions regarding the dynamics of child sexual abuse." In *Coble*, the court of criminal appeals held that the expert testimony was not reliable because it was unclear what principles of forensic psychiatry the expert might have relied upon, pointing out that the expert witness "cited no books, articles, journals, or even other forensic psychiatrists who practice in this area." *Coble*, 330 S.W.3d at 278–79. We do not read this holding as establishing a requirement that expert testimony must always refer to or rely on publications or other professionals in the field. The only requirement is that the expert's testimony properly relies on or utilizes the principles involved in the particular field.

Here, the specific principles of psychology relied on by Dr. Carter were sufficiently clear. For example, he detailed the psychological reasons for delayed outcry by abuse victims and the ongoing process of disclosure. He also described the psychological factors involved in victim selection and explained how the psychological relationship between the perpetrator and the victim

27

enables sexual abuse. He applied his specialized knowledge and experience and psychological principles to various hypothetical scenarios, describing his reasoning clearly throughout. From his testimony, it is clear that Dr. Carter was applying the general principles of psychology to the area of child sexual abuse. The record reflects that, unlike the expert in *Coble*, Dr. Carter relied on and utilized the principles in the relevant area of psychology.

We conclude that Dr. Carter's testimony was reliable. Accordingly, the trial court did not abuse its discretion in admitting the complained-of testimony over appellant's objection. Appellant's third point of error is overruled.

## Admission of Hearsay Statements

Appellant complains in his fourth point of error that the admission of hearsay statements of J.B. and her mother through the testimony of J.B.'s pediatrician and the SANE nurse violated his right to confrontation. He further argues that the admission of these statements was "improper bolstering."

### *Preservation Issues*

At trial, the prosecutor questioned J.B.'s pediatrician about statements J.B.'s mother made to her when she brought J.B. in to be examined, offering the statements as excited utterances. *See* Tex. R. Evid. 803(2). Appellant objected on the grounds that the evidence was hearsay, too remote to constitute an excited utterance, and that the proper predicate had not been laid. He subsequently further objected to double hearsay. The prosecutor also asked the doctor about statements J.B. made to her, offering them as statements made for the purpose of medical diagnosis

28

or treatment. *See id.* 803(4). Appellant objected to that testimony on the grounds that the evidence was hearsay and the proper predicate was lacking. At no point did appellant object to any of the pediatrician's testimony on the grounds of lack of confrontation or improper bolstering. Accordingly, as to any complaints about the admission of hearsay statements through the pediatrician's testimony, appellant has failed to preserve error and has forfeited the right to complain on appeal. *See* Tex. R. App. P. 33.1(a) (to preserve complaint for appellate review, party must have presented specific and timely request, motion, or objection to trial court and, further, must have obtained adverse ruling); *see also Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd).

During the testimony of the SANE nurse, the State offered the medical records of the SANE exam. Appellant objected to "hearsay and not a properly authenticated business record, improper bolstering, and denial of confrontation under the United States Constitution Sixth Amendment." Thus, as to the medical records and any hearsay statements contained therein, appellant preserved his confrontation and improper bolstering complaints for appellate review. However, when the prosecutor asked the nurse what J.B. told her during the interview portion of the SANE exam, appellant objected to "hearsay and confrontation." He did not object to the nurse's testimony on the ground of improper bolstering. Accordingly, as to any complaints that the admission of J.B.'s hearsay statements through the nurse's testimony constituted improper bolstering, appellant has failed to preserve error and has forfeited the right to raise that complaint on appeal. *See* Tex. R. App. P. 33.1(a); *see also Pena*, 353 S.W.3d at 807; *Peavey*, 248 S.W.3d at

29

470. He did, however, properly preserve his complaint that the admission of J.B.'s hearsay statements to the SANE nurse violated his right of confrontation.

*Confrontation*

The Confrontation Clause of the Sixth Amendment provides a right in both federal and state prosecutions to confront and cross-examine adverse witnesses. U.S. Const. amends. VI, XIV; *Pointer v. Texas*, 380 U.S. 400, 406 (1965); *Woodall v. State*, 336 S.W.3d 634, 641 (Tex. Crim. App. 2011). The principal concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

To implicate the Confrontation Clause, an out-of-court statement must (1) have been made by a witness absent from trial, and (2) be testimonial in nature. *Crawford v. Washington*, 541 U.S. 36, 50–52, 59 (2004); *Woodall*, 336 S.W.3d at 641–62; *Jessop v. State*, 368 S.W.3d 653, 680 (Tex. App.—Austin 2012, no pet.). It is the "literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *California v. Green*, 399 U.S. 149, 157 (1970). Thus, the holding in *Crawford* applies only when a party seeks to offer the extrajudicial testimonial statements of a witness *who does not testify at trial*. *See Crawford*, 541 U.S. at 59; *Jessop*, 368 S.W.3d at 680. When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of prior testimonial statements. *Crawford*, 541 U.S. at 59 n.9; *Green*, 399 U.S. at 162; *Woodall*, 336 S.W.3d at 641–62; *see, e.g.*, *Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Hanson*

*v. State*, 180 S.W.3d 726, 731 (Tex. App.—Waco 2005, no pet.); *Crawford v. State*, 139 S.W.3d 462, 465 (Tex. App.—Dallas 2004, pet. ref'd).

In this case, J.B. testified at trial and was subject to cross-examination. Appellant did in fact have the opportunity to confront her as a witness. Accordingly, we discern no violation of appellant's confrontation rights.[12] We overrule appellant's fourth point of error insofar as it relates to his complaint about the violation of his right to confrontation.

*Bolstering*

Bolstering has been defined as "any evidence the sole purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"[13] *Rivas v. State*,

---

[12] As discussed previously, appellant raised his confrontation objection only to the medical records of the SANE exam and the testimony of the SANE nurse. The record reflects that the only hearsay statements made to the SANE nurse were made by J.B., not her mother. Nevertheless, we note that J.B.'s mother also testified at trial and was subject to cross-examination. Thus, we likewise discern no violation of appellant's confrontation rights in this regard.

[13] As this Court has noted in previous opinions, there is some question as to whether a "bolstering" objection preserves error. *See Muniz-Luna v. State*, No. 03-09-00266-CR, 2010 WL 3810820, at *3 n.4 (Tex. App.—Austin Sept. 30, 2010, pet. ref'd) (mem. op., not designated for publication); *Biddy v. State*, No. 03-01-00182-CR, 2002 WL 533652, *2–3 (Tex. App.—Austin Apr. 11, 2002, no pet.) (mem. op., not designated for publication). We recognize that while "bolstering" was a proper objection in Texas courts prior to the adoption of the rules of evidence, the rules themselves contain no specific provision regarding bolstering. *See Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring) (arguing that bolstering objection should no longer be recognized, because "an objection that certain evidence is 'bolstering' in no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules."); *see also Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009) (noting that "[m]any appellate courts have cited the *Cohn* concurrence as authority to abandon 'bolstering' as a valid objection to preserve error for review"). However, given our disposition of this point of error, we need not

275 S.W.3d 880, 886 (Tex. Crim. App. 2009) (quoting *Cohn*, 849 S.W.2d at 819). However, bolstering occurs only when evidence is improperly used by a party to add credence or weight to some *earlier* unimpeached piece of evidence. *Cohn*, 849 S.W.2d at 819; *see Valcarcel v. State*, 765 S.W.2d 412, 415 (Tex. Crim. App. 1989) (agreeing with appellate court's holding that because officer was first witness to testify, his testimony regarding "drug courier profile" could not have been used to bolster second officer's later testimony); *Hyde v. State*, 869 S.W.2d 660, 663 (Tex. App.—Beaumont 1994, no pet.) ("[I]mproper 'bolstering' does not occur when the alleged 'bolstering' takes place *before* the unimpeached witness has had a chance to testify.") (emphasis in original).

Here, the SANE nurse testified before J.B. testified. It was during her testimony that the medical records from the SANE exam were admitted. Thus, neither her testimony nor the medical records could have bolstered J.B.'s later testimony. We overrule appellant's fourth point of error insofar as it relates to his complaint about improper bolstering.

### Punishment Evidence

In his final point of error, appellant contends that the trial court erroneously admitted digital evidence, including pornographic images and video files, during the punishment phase of trial. He argues the evidence was inadmissible because it was not sufficiently linked to him.

---

address the continuing vitality of a "bolstering" objection in Texas.

*The Digital Evidence*

During the punishment phase of trial, the trial court admitted digital evidence recovered by a computer forensics analyst from the desktop computer and various electronic storage devices removed from the apartment appellant shared with Rene and her children. The analyst testified about the following digital evidence recovered from these items:

- On the desktop computer, the analyst found 12 images of child pornography, some LimeWire information of interest, and Internet history of interest. The recovered images all depicted prepubescent females.[14]

- On a one-gigabyte thumb drive, the analyst found 11 images of child pornography that were saved to the memory device between December 26, 2008, and January 3, 2009. These images all depicted prepubescent females.

- On one of the CDs in a collection of 13 CDs, the analyst found seven "very graphic" videos of child pornography. These videos depicted adults engaging in various sexual acts with children, including oral sex, adult males ejaculating on children, and penile-vaginal intercourse. The file names of these videos contained known child pornography terms.

- On a two-gigabyte thumb drive, the analyst found a 17-minute home video of an adult male masturbating with a vacuum cleaner.[15] Also on that memory

---

[14] Six of these images were the same images found on the one gigabyte thumb drive discussed in the text. The analyst testified that LimeWire is peer-to-peer file sharing software that, in his experience, is often used to download images and videos of child pornography. The Internet history he described included 20 websites visited that were associated with child pornography. We do not repeat the website names in this opinion. However, we note that, according to the analyst's testimony, they contained known child pornography search terms such as "preteen," "young," "kiddie," "super-young," "bottoms," "pussy," "tits," "ass," "whore," "nudist," "XXX," "PTHC" (preteen hardcore), "PEDO" (pedophile), "video," "photos," and "pics."

[15] The male in this video, whose face was not shown, was sitting on a chair that was similar in style to a chair depicted in photographs of appellant's apartment. In addition, the man was wearing a linked black and silver bracelet similar in appearance to a bracelet admitted into evidence in the guilt-innocence phase. The record reflects that this bracelet was removed from appellant by

33

device, the analyst found three images with "questionable" content, meaning he was unable to determine the age of the children depicted in the pornographic images.

In his brief, appellant complains about the admission of "many images and files that contained child pornography that were found on the computer in the home in which Appellant resided." As noted above, however, not all of the images and video files were recovered solely from the computer. For purposes of this discussion, we will assume appellant's complaint encompasses all of the digital evidence admitted during the punishment phase, not only the images found on the desktop computer.[16]

*Standard of Review*

We review a trial court's decision to admit punishment evidence under an abuse-of-discretion standard. *Davis*, 329 S.W.3d at 802; *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We may not disturb a trial court's evidentiary ruling absent an abuse of discretion. *McGhee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). The trial court abuses its discretion only when its decision lies "outside the zone of reasonable disagreement." *Davis*, 329 S.W.3d at 802; *Walters*, 247 S.W.3d at 217. If the trial court's evidentiary ruling is correct on

law enforcement officials when they arrested him for sexually abusing J.B. the day after the incident Rene interrupted. In his testimony, appellant acknowledged ownership of the bracelet. Rene testified that she had given the bracelet to appellant as a Christmas gift in 2008. The bracelet also appeared to be the same as the bracelet shown in the deleted video files recovered from the Kodak camera that had been admitted at the guilt-innocence phase of trial.

[16] The record reflects that appellant requested, and the trial court granted, a running objection to the analyst's "testimony about this, those images." Thus, we conclude that his objection at trial incorporated all of the digital evidence about which the analyst testified during punishment.

any theory of law applicable to that ruling, we will uphold that decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

*Admissibility Under Article 37.07*

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and grants the trial court broad discretion to admit evidence that the court deems relevant to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012). Admissibility of evidence at the punishment phase of a trial of a non-capital felony offense is a function of policy rather than relevancy. *Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009); *Come v. State*, 82 S.W.3d 486, 491 (Tex. App.—Austin 2002, no pet.). In ascertaining what is relevant to sentencing, the focus is on what is helpful to a jury in deciding an appropriate sentence for a defendant. *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008); *Come*, 82 S.W.3d at 491.

During the punishment phase of trial, the State may offer evidence as to any matter the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). When presented with an appropriate objection, the trial court has the initial responsibility to determine the threshold issue of whether an extraneous offense is admissible. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996); *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). This threshold determination is not a finding by the trial court that the State has proved an extraneous offense beyond a reasonable doubt, but is instead a finding

that sufficient evidence exists from which a jury could reasonably so find. *See Mann*, 13 S.W.3d at 94; *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.); *see also Smith v. State*, 227 S.W.3d 753, 759–60 (Tex. Crim. App. 2007) ("Unless the extraneous misconduct evidence is such that the [jury] can rationally find the defendant criminally responsible for the extraneous misconduct, the trial court is not permitted to admit it at a punishment hearing."). The jury, as the exclusive judge of the facts, must determine whether or not the State has proved the extraneous conduct beyond a reasonable doubt. *Mitchell*, 931 S.W.2d at 954.

Relying on cases applying the "affirmative links" rule in drug possession cases and applying that rule to possession of child pornography, appellant maintains that the evidence in this case fails to sufficiently link the complained-of digital evidence to him because it fails to demonstrate beyond a reasonable doubt that the images and files were "downloaded, viewed, or used by him." Appellant bases his argument on his assertions that the computer "belonged to [Rene]" and "was accessible to [Rene], the children living in the home, and presumably any other reasonably computer literate person who had spent some time in the home." However, while Rene testified that she had the computer before appellant began living with her, ownership by one individual does not necessarily preclude use or access by others. In fact, appellant admitted to using the computer. In addition, we note that other than Rene and J.B., the record contains no evidence of any other

36

individuals using the computer.[17]  We reject appellant's suggestion that ownership and exclusive access are required to link the evidence to appellant.

The record reflects that appellant, the only adult male in the apartment, had used the computer in the past, had time in the apartment alone to use the computer when Rene was not home, and had ready access to the computer and electronic storage devices on which the pornographic evidence was found.  However, this access was not the only evidence connecting appellant to the pornographic evidence.  J.B. indicated that appellant took digital videos of her on the camera and then transferred them onto the computer.  This is corroborated by the fact that deleted pornographic video files and images of appellant and a young prepubescent girl whom the jury could reasonably conclude was J.B. were recovered from the very camera appellant had in his hand when discovered by Rene—a camera he refused to relinquish until after he returned from going outside the house.[18]  In addition, the jury could reasonably conclude that the man masturbating in the 17-minute home video with the vacuum cleaner, identified by the bracelet he wore and the chair he was sitting on,

---

[17]  Rene testified that she used the computer for basic things such as spreadsheets, typing documents and papers for school, checking her Facebook and emails, and live video conferencing with her colleagues.  In response to the prosecutor's question about things she liked to do, J.B. testified that she liked to "play on [her] mom's computer and do homework and color."  One could assume that the other two children living in the home had access to the computer as well.  However, no evidence in the record reflects that either the 12-year-old or the six-year-old used the computer.  Nor is there any evidence that any one else spent time in the apartment or used the computer.

[18]  A reasonable inference from the evidence is that appellant recorded himself and J.B. with the camera when they were on the couch bed that morning, just as J.B. testified, and then deleted the videos when he left the house before returning the camera to Rene.  In addition to J.B.'s testimony about appellant taking pictures of her that morning, Rene witnessed appellant with the camera in his hand when he was sitting next to her daughter who was naked from the waist down.  Further, the deleted video files from that camera—created that morning—depicted a young prepubescent girl with a build similar to that of J.B. as well as pillows and bedding consistent with the pillows and bedding of the couch bed where Rene discovered appellant with her daughter.

was appellant. This video was stored on the same memory storage device as other pornographic images. This home video, along with the evidence that appellant took videos of J.B. and transferred them to the computer, shows that appellant had the technical knowledge to create and store digital pornographic materials on electronic storage devices.

Further, the children depicted in the complained-of images and video files were similar to the age, body type, and developmental stage of J.B. These images and videos of young prepubescent girls similar to J.B.—displayed in sexual positions and subjected to various sexual acts—were found on multiple electronic devices in appellant's home. The jury had just convicted appellant of sexually abusing J.B. *See, e.g.*, *Wise v. State*, 364 S.W.3d 900, 907 (Tex. Crim. App. 2012) (jury could consider defendant's history of sexually assaulting children when deciding whether he knowingly possessed child pornography on his computer). The evidence here showed that appellant had engaged in various improper sexual acts with a young prepubescent girl when she was seven and eight years old and that he also inappropriately recorded that child using a digital camera. This evidence demonstrated appellant's prurient sexual interest in children, his use of a digital camera and computer to pursue that interest, and a predilection for child pornography.

Whether an extraneous offense or bad act was established beyond a reasonable doubt is a question of fact for the jury, not a preliminary question of admissibility for the trial court. *Mitchell*, 931 S.W.2d at 953; *see Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.). The trial court is not charged with determining whether the State has proven extraneous conduct beyond a reasonable doubt. *See Mitchell*, 931 S.W.2d at 953; *Nanez*, 179 S.W.3d at 151–52. Rather, the trial court satisfies its gatekeeping responsibility by making an

initial determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *Mann*, 13 S.W.3d at 94; *see Mitchell*, 931 S.W.2d at 954. From the evidence noted above, the trial court could have reasonably concluded that there was sufficient circumstantial evidence from which a jury could conclude beyond a reasonable doubt that appellant downloaded, viewed, used, possessed, or accessed the complained-of digital evidence.[19]

Moreover, at the punishment phase of trial, relevant evidence is that which assists the fact finder in determining the appropriate sentence for a particular defendant in a particular case. *Hayden*, 296 S.W.3d at 552 (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Relevant evidence is not limited to evidence of other crimes or bad acts, nor is it limited to the circumstances of the offense. Rather, article 37.07 provides for the admission of *any* matter the court deems relevant to sentencing. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The trial court has broad discretion in determining admissibility of evidence at the punishment phase of trial. *Cooks v. State*, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992). Here, the jury had just convicted appellant of sexually abusing a young prepubescent girl whom he had also inappropriately digitally recorded. The complained-of evidence revealed that he lived in an apartment where pornographic images and

---

[19] The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). It is within the province of the fact finder to choose which inference is most reasonable. *See Laster v. State*, 275 S.W.3d 512, 523 (Tex. Crim. App. 2009). Further, circumstantial evidence is as probative as direct evidence. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). As with any question of circumstantial evidence and inference, "'the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence.'" *Boston v. State*, No. 03-10-00399-CR, 2012 WL 2509798, at *3 (Tex. App.—Austin June 27, 2012, pet. filed) (quoting *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.)).

videos of young prepubescent girls—similar to the child he sexually abused—were found on multiple electronic devices. The trial court could have concluded that appellant's proximity to such materials in his home—materials that, at a minimum, he had access to—was relevant information for the jury.[20] Thus, the trial court could have reasonably concluded that the complained-of digital evidence was relevant to appellant's sentencing even if it did not constitute evidence of an extraneous offense or bad act.

For the above reasons, we cannot say the trial court abused its discretion in admitting the complained-of digital evidence. Appellant's fifth point of error is overruled.

## CONCLUSION

We conclude that the trial court did not abuse its discretion by excluding evidence of the purported prior false allegation of sexual abuse made by J.B.'s mother, excluding evidence of alternative sources for J.B.'s sexual knowledge, admitting the testimony Dr. Carter, admitting the hearsay statements of J.B., or admitting digital evidence of child pornography during the punishment phase of trial. Accordingly, we affirm appellant's judgments of conviction.

---

[20] The trial judge implicitly recognized the reasonableness of an even stronger inference when she excluded the evidence of the child pornography video files recovered from the computer in the State's rebuttal case. The trial court noted that the fact that appellant was the one who viewed the child pornography was "something that you could assume," but, concerned about the link between appellant and the video files, felt that it was not admissible at that point to rebut appellant's testimony that he could not engage in sexual misconduct with a child. She did, however, explicitly acknowledge that the evidence might be admissible at punishment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed:   October 19, 2012

Do Not Publish