Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★         ★ ★ ★

# OPINION

No. 04-09-00544-CR

Alfredo **HERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. 08-CRS-162
Honorable Alex William Gabert, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed: May 26, 2010

AFFIRMED

A jury found appellant Alfredo Hernandez guilty of criminal solicitation of a minor and assessed punishment at ten years' confinement. The trial court suspended the sentence and placed appellant on ten years' community supervision. On appeal, appellant argues (1) the trial court lacked jurisdiction, and therefore, his conviction is void, (2) the trial court erred in refusing to admit into evidence the complainant's MySpace page, and (3) there is insufficient corroboration to establish his guilt. We affirm.

**FACTUAL BACKGROUND**

Appellant's first cousin's daughter, B.M., is the complainant in this case. The State alleged appellant solicited sexual acts from B.M. on Friday, April 18, 2008, during a school-sponsored walk-a-thon. Prior to the walk-a-thon, appellant—a police officer—had several encounters with B.M., including stopping in his patrol car to ask her how she was doing in school, giving her a ride to the store, giving her a ride home from the pool, and asking her about her sexual activity with her boyfriend. On the evening of the walk-a-thon, B.M.—a seventh grade student—walked with several of her friends to the walk-a-thon. Along the way, another girl in a car tried to run the girls over. When the girls arrived at the school, B.M. reported the car incident to appellant. Appellant warned her not to get into a fight. Later, appellant told B.M. and several of her friends that he wanted to talk to B.M. alone. According to B.M., appellant asked her if she would give him a "hand job" and a "blow job," and he asked to "put it in [her] for 15 minutes" in exchange for money. Initially appellant offered her $100, but B.M. testified "he went [up to] $200." M.A.S., B.M.'s boyfriend at the time, testified he saw appellant talking to B.M. at the walk-a-thon and B.M. "had a face on as if she didn't want to talk to him. And just with her arms down." The conversation lasted for five to ten minutes. When B.M. and appellant finished talking, B.M. returned and sat on a bench with her friend, S.S. Later, M.A.S. asked B.M. what appellant told her because "she looked unhappy while she was talking to him." B.M. responded that she would tell him later.

S.S. and B.M. left the walk-a-thon together, stopped by S.S.'s house, and eventually went to B.M.'s aunt's house. While there, B.M. told S.S. what appellant said to her at the walk-a-thon. S.S. stated B.M. was crying, and S.S. told her that she needed to report the solicitation. The two then met M.A.S. and told him what had happened. S.S. also testified B.M. told her that appellant had offered

to pick her up at night at any time, and on the night of the walk-a-thon, appellant offered to give B.M. a ride to her father's house the next day. The following Monday, B.M. reported the solicitation to Hilda Moreno, the school counselor. Moreno notified the principal of the school and Child Protective Services ("CPS").

Irasema Sanchez, B.M.'s step-mother, testified she went with B.M. to the police station to report the solicitation. While there, she received a phone call from appellant who told her to "talk to [B.M.] and remind her that we were family, . . . for her to leave everything the way it was, [and] that he had offered her a hundred dollars but it was for her quinceanera dress." She stated appellant then asked to talk to B.M.'s father (appellant's cousin), B.M.'s father put the phone on speaker, and appellant told him the same thing.

Eduardo Enriquez, a special investigator for CPS, testified he spoke with appellant one week after the solicitation. Appellant agreed to give an oral statement and made it clear to Enriquez that he and B.M. were related and that he was trying to keep her out of trouble because she was getting into fights and running away. Appellant told Enriquez that B.M. had run away several times in the past and her mother was having a lot of problems with her. Appellant, however, could not produce any documentation reflecting B.M. was troubled or had ever run away, nor did Enriquez's investigation reveal any reports of B.M. having run away. When asked during the interview to describe B.M. physically, appellant stated, "Oh yeah my niece, she's a very beautiful girl." He stated she had "beautiful green eyes," and she was "white complected, guerita." Enriquez testified that appellant's demeanor changed when he began to describe B.M.—"he reclined back and like 'Oh yeah, she's,' I mean his whole complexion changed. Brought a smile to his face, said she was a real

beautiful girl." Appellant commented that most girls in the area were dark complected, but B.M. was "guerita."

Jovita Shives, a CPS investigator, testified she was present during appellant's interview with Enriquez. According to Shives, appellant said he talked to B.M. on two occasions the evening of the walk-a-thon: the first time he just said hello; the second time she was with a group of friends when appellant stopped her and insisted on speaking to her alone regarding a fight. Appellant offered to pick B.M. up after the walk-a-thon to look for the vehicle that tried to run her over. After learning of the solicitation allegations, appellant stated he contacted B.M.'s grandmother and asked her to arrange a meeting between himself and B.M.'s father. He asked B.M.'s grandmother to tell B.M. to tell the truth. When asked to describe B.M., appellant said she was a problematic child who ran away at three o'clock in the morning and who was always getting into fights. He stated she was "nothing but trouble." When asked to describe her physically, appellant "threw himself back in the chair, . . . threw his hands up and said . . . , 'She's beautiful. She's got green eyes and black eye lashes . . . , she's beautiful. She's thin, light skinned." When asked specifically about oral sex, he commented that "he wished every man could have it more often, blow jobs."

Pedro Castillo, a sergeant in the police department at the Rio Grande City school district, testified he also interviewed appellant. Appellant stated he talked to B.M. the night of the walk-a-thon, offered to file a report about the car incident, and offered her transportation if she needed it. Castillo, however, testified no report had ever been filed and no referrals had been made regarding B.M. running away.

B.M.'s mother testified she never had a reason to report B.M. as a runaway, B.M. had never been referred to the juvenile authorities, and there were no complaints regarding B.M. in her school activities.

**JURISDICTION**

In his first, second, and third issues on appeal, appellant argues his conviction is invalid because his indictment was not properly returned and presented. Appellant points out he was indicted by a grand jury empaneled by the 381st Judicial District Court ("381st"); his indictment, however, was filed in the 229th Judicial District Court ("229th")—the court in which appellant was later tried and convicted. Appellant asserts his case was not "officially transferred" from the 381st to the 229th; therefore, the 229th did not have jurisdiction over the matter, and his conviction is void.

Criminal district courts have original jurisdiction in felony criminal cases. TEX. CODE CRIM. PROC. ANN. art. 4.05 (Vernon 2005). In order to vest a court with jurisdiction of a criminal action, a grand jury must present an indictment or information charging a person with the commission of an offense. TEX. CONST. art V, § 12(b); *see* TEX. CODE CRIM. PROC. art. 20.21. Although a specific district court may impanel a grand jury, it does not necessarily follow that all cases returned by that grand jury are assigned to that court. *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd). A case assigned to a district court other than the district court to which the grand jury presented the indictment amounts only to a procedural irregularity, not a jurisdictional defect. *See Tamez v. State*, 27 S.W.3d 668, 671 (Tex. App.—Waco 2000, pet. ref'd) (no jurisdictional defect where grand jury empaneled by 232nd Judicial District Court of Harris County returned indictment, which was subsequently filed in 180th Judicial District Court of Harris County); *see also State v. Smith*, 957 S.W.2d 163, 164–65 (Tex. App.—Austin 1997, no pet.) (indictment returned by Runnels

County grand jury but filed in Tom Green County district court should have been challenged before entry of guilty plea); *see also Mosley v. State*, 172 Tex. Crim. 117, 120, 354 S.W.2d 391, 393–94 (1962) (rejecting "jurisdictional" challenge where defendant was tried and convicted in district court other than one that empaneled grand jury even though record contained no transfer order). An objection to a procedural irregularity should be raised in a pretrial motion. *Tamez*, 27 S.W.3d at 671.

Here, appellant's indictment reflects that it was presented to the 381st by a grand jury empaneled by the 381st: "THE GRAND JURY OF STARR COUNTY, TEXAS, duly selected, empaneled, sworn, charged, and organized at the April 2008 TERM *of the 381st District Court* for Starr County, upon their oaths *present to said Court . . .*" (emphasis added). The indictment then charges appellant with criminal solicitation of a minor, a felony offense. Therefore, the indictment was properly presented to vest the 381st with jurisdiction of appellant's cause, and any objection to proceeding in the 229th—a procedural irregularity—should have been raised in a pretrial motion. Appellant, however, did not complain to the trial court about proceeding in the 229th. Consequently, appellant's complaint concerning the indictment, raised for the first time on appeal, is not preserved for our review.

## ADMISSIBILITY OF EVIDENCE

In his fourth and fifth issues on appeal, appellant argues the trial court erred when it refused to admit into evidence B.M.'s MySpace page, thereby violating his constitutional rights to confrontation and due process. The MySpace page, created by B.M., shows a picture of B.M. and her boyfriend at school taken sometime after the alleged solicitation. The caption to the picture reads, "omg how nasty i get it all the time jeje." Appellant contends the picture and caption imply that, prior to her encounter with appellant, B.M. had knowledge of the sexual terms she accuses him

of using in the solicitation. Thus, according to appellant, the evidence is relevant because it tends to show B.M. actually participated in certain sexual activities, and therefore, she did not learn the words referring to these activities for the first time from anything appellant said to her. According to appellant, the MySpace page supports his theory that B.M. fabricated the accusation against him.

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Russeau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009); *Pollard v. State*, 255 S.W.3d 184, 187 (Tex. App.—San Antonio 2008), *aff'd*, 277 S.W.3d 25 (Tex. Crim. App. 2009). A trial court abuses its discretion when its decision is outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). We may not reverse a trial court's decision regarding the admissibility of evidence solely because we disagree with the trial court's decision. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's judgment if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. If the evidence is not relevant, it is not admissible. *See id.* 402. In deciding whether evidence is relevant, a trial court should ask whether a reasonable person, with some experience in the real world, would believe the evidence is helpful in determining the truth or falsity of any fact that is of consequence to the lawsuit. *Montgomery*, 810 S.W.2d at 376; *Benoit v. State*, 87 S.W.3d 668, 673 (Tex. App.—San Antonio 2002, pet. ref'd).

Here, the image on the MySpace page depicts B.M. smiling while her boyfriend has his arm around her. The caption to the picture, "omg how nasty i get it all the time jeje," is vague, offers no contextual support, and is potentially misleading. We are left to speculate as to what the caption refers, the nature of its intended meaning, and whether it was written in jest. Even if we take the caption to imply what appellant asserts it implies—that B.M. was sexually active prior to the solicitation—we disagree that the implication makes it more likely that B.M. fabricated the allegation of solicitation. Moreover, because the picture was taken after the solicitation, the caption also was posted after the solicitation. Therefore, the caption has no specific relevance to B.M.'s knowledge of sexual terms *before* her encounter with appellant. For these reasons, we conclude the evidence is irrelevant, the trial court did not abuse its discretion in refusing to admit it, and its exclusion did not violate appellant's constitutional rights. *See Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd) (Constitution requires introduction of only otherwise relevant and admissible evidence).

**CORROBORATION REQUIREMENT**

In his sixth and seventh issues on appeal, appellant argues the evidence adduced at trial, after excluding B.M.'s testimony, did not sufficiently rise to the level of strongly corroborative evidence of his guilt, which is required under section 15.031(c) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 15.031(c) (Vernon 2003). We must disagree.

**A. Penal Code Section 15.031(c)**

As applicable in this case, a person commits the offense of solicitation of a minor if, with intent that a sexual assault be committed, the person by any means requests, commands, or attempts to induce a minor to engage in specific conduct that, under the circumstances surrounding the actor's

conduct as the actor believes them to be, would constitute a sexual assault. TEX. PENAL CODE §§ 15.031(b), 22.011; *Lankford v. State*, 255 S.W.3d 275, 276–77 (Tex. App.—Waco 2008, pet. ref'd). However, a person may not be convicted of solicitation of a minor on the uncorroborated testimony of the minor allegedly solicited "unless the solicitation is made under circumstances strongly corroborative of both the solicitation itself and the actor's intent that the minor act on the solicitation." TEX. PENAL CODE § 15.031(c).

The corroboration required under section 15.031(c) is analogous to, and should be read in conjunction with, the corroboration requirement found in article 38.14 of the Texas Code of Criminal Procedure. *Lankford*, 255 S.W.3d at 277; *see Richardson v. State*, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985). Article 38.14 provides that a conviction may not be sustained upon the testimony of an accomplice unless it is corroborated by other testimony which tends to connect the defendant with the offense. TEX. CODE CRIM. PROC. art. 38.14. Thus, the corroboration in criminal solicitation cases must link the defendant to the crime at two separate stages: the evidence must be corroborative of both the solicitation itself and the actor's intent that the other person act on the solicitation. *Richardson*, 700 S.W.2d at 594. In *Richardson*, the defendant argued the word "strongly" suggested a more stringent standard than that of article 38.14 should be applied. The Court of Criminal Appeals disagreed, however, and explained that the "strongly corroborative" requirement does not indicate a different standard of proof; rather, it merely re-emphasizes the need for an additional safeguard, that being that the corroboration must go to both the solicitation and the solicitor's intent. *Id.*; *see Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991) (citing favorably to *Richardson*); *Holladay v. State*, 709 S.W.2d 194, 204 (Tex. Crim. App. 1986) (same).

In assessing the sufficiency of the corroborating evidence, we eliminate the minor victim's testimony from consideration and then, viewing the remaining evidence in the light most favorable to the jury's verdict, determine whether the combined weight of the remaining evidence, even if entirely circumstantial, tends to connect the accused with the crime. *See Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008); *Richardson*, 700 S.W.2d at 594. The tends-to-connect standard presents a low hurdle for the State because the evidence need not directly link the accused with the crime or be sufficient in itself to establish guilt. *See Brown*, 270 S.W.3d at 567; *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). However, a mere showing of being associates or that the accused and the minor were together before or shortly after the commission of the offense is not by itself sufficient corroboration. *See Sheffield v. State*, 847 S.W.2d 251, 259 (Tex. App.—Tyler 1992, pet. ref'd). Also, evidence that merely goes to show motive or opportunity of the accused to commit the crime is insufficient corroboration. *See id.* at 260. The person allegedly solicited may state any number of facts that are corroborated by evidence of other witnesses; still, if the facts thus corroborated do not tend to connect the accused with the crime, the requirements of section 15.031(c) are not met. *See id.* Finally, we acknowledge the jury is permitted to rely upon reasonable inferences in determining whether the other facts and suspicious circumstances tend to connect the accused with the offense. *Peden v. State*, 917 S.W.2d 941, 946–47 (Tex. App.—Fort Worth 1996, pet. ref'd). Thus, when considering the combined weight of the remaining evidence, we also consider reasonable inferences that can be drawn therefrom. *See id.*

## B. Sufficiency of Corroborating Evidence

It is undisputed that appellant and B.M. talked together privately at the walk-a-thon. This fact alone, however, will not suffice to corroborate either the solicitation or appellant's intent. *See*

*Sheffield*, 847 S.W.2d at 260 (evidence that merely shows opportunity to commit crime is insufficient corroboration). However, after coupling this evidence with all the other corroborating evidence, we conclude the combined weight of the evidence tends to connect appellant to both the solicitation and the requisite intent. *Cf. Dowthitt*, 931 S.W.2d at 249 (evidence of presence coupled with other suspicious circumstances may tend to connect accused to offense). First, as to the solicitation, M.A.S. testified B.M. appeared unhappy while talking to appellant. S.S. testified B.M. cried when she told S.S. what appellant said to her. B.M.'s step-mother testified appellant admitted to offering B.M. $100. The step-mother also testified appellant called her and asked her to remind B.M. that they "were family" and to "leave everything the way it was . . . ." Appellant commented to the investigator that he "wished every man could have it more often, blow jobs." Based on this evidence, the jury could have reasonably inferred appellant solicited a sexual act from B.M.

Second, as to appellant's intent, his admission that he offered B.M. $100, and Enriquez's testimony that appellant's entire demeanor and complexion changed as he described B.M.'s physical appearance support the inference that appellant intended B.M. to act upon the solicitation. We conclude the evidence, after excluding B.M.'s testimony, tends to connect appellant to both the solicitation and the requisite intent, and therefore, the evidence is sufficiently corroborative under Penal Code section 15.031(c).

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice


Publish