

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-12-00108-CR

**JOSE GUADALUPE RODRIGUEZ,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

**From the County Court**
**Navarro County, Texas**
**Trial Court No. C-33837-CR**

_____

## MEMORANDUM  OPINION

_____

In two issues, appellant, Jose Guadalupe Rodriguez, challenges his convictions

for sexual assault of a child and indecency with a child. *See* TEX. PENAL CODE ANN. §§

21.11(a)(1), 22.011(a)(2)(A) (West 2011). Specifically, Rodriguez argues that the trial

court erred in allowing the State to present inadmissible extraneous-offense evidence in

violation of the Texas Rules of Evidence. *See* TEX. R. EVID. 401-04. We affirm.[1]

_____

[1] We note that, throughout his brief, Rodriguez repeatedly refers to the child victim and her family by their given names. However, Texas Rule of Appellate Procedure 9.8(c)(1) requires that, except

# I. BACKGROUND

In this case, Rodriguez was accused of penetrating the genitals of E.T., a child younger than seventeen years of age, and causing E.T. to touch his genitals with intent to arouse or gratify his sexual desire. The incident allegedly transpired on or about March 27, 2011, while Rodriguez rode in the car with E.T.'s family. Trial testimony revealed that Rodriguez is E.T.'s uncle. On the day in question, the family got together to attend the funeral of E.T.'s grandfather. Among those in attendance was E.T.'s sister, who had traveled from college in Ranger, Texas, to attend the funeral.

Following the burial and wake, E.T.'s family, including her mother, father, and Rodriguez, drove E.T.'s sister back to Ranger. During the drive, Rodriguez sat in the back seat with E.T. At some point during the drive, the family stopped at a rest area on the northbound side of I-45 in Navarro County so that everyone could sleep. E.T. testified that, while everyone slept, Rodriguez put his hand on her leg, moved his hand up her leg, put his hand under her shorts, and eventually put his finger inside her vagina. E.T. did not say anything while the assault transpired because she felt as if she could not speak. Later, Rodriguez allegedly grabbed E.T.'s hand and forced her to touch his penis. E.T. asserted that she could not remove her hand because Rodriguez was too strong. In any event, the assault stopped when a phone alarm went off. E.T. was fourteen years of age when the incident occurred.

---

for a docketing statement, in all papers submitted to the Court, a minor and his or her parents and family members should be identified only by an alias. *See* TEX. R. APP. P. 9.8(c)(1).

E.T. did not tell anyone about the incident for several days. However, in the days following the incident, E.T. recalled being scared when Rodriguez repeatedly tried to visit her while she was home alone and later when Rodriguez tried to put her foot in his mouth while she sat in his truck. E.T. eventually told her priest about the incident. E.T.'s priest encouraged E.T. to tell her mother, which she did. E.T.'s mother subsequently told E.T.'s father. The next day, E.T.'s parents confronted Rodriguez's wife about what Rodriguez had allegedly done. That same night, Rodriguez allegedly broke into E.T.'s house in Chambers County, Texas; held E.T.'s mother at gunpoint; and demanded that E.T. be brought to him so that he could interrogate her. Rodriguez told E.T.'s mother that he was upset that his wife had been informed about the incident. In addition, Rodriguez stated that the family would pay for ruining his life. Rodriguez denied raping E.T., but he did admit to touching her.

Thereafter, Rodriguez was apprehended by police. While Rodriguez was in custody, E.T.'s father found a letter written by Rodriguez in the house. In the letter, Rodriguez apologized for touching E.T.; however, he denied raping her because there was no blood.

During trial, Rodriguez objected to the introduction of evidence pertaining to the alleged break-in and confrontation at gunpoint with E.T.'s mother. The trial court overruled Rodriguez's objections.

At the conclusion of the evidence, the jury found Rodriguez guilty of the charged offenses and sentenced him to fifteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for each count. The trial court ordered that

the sentences run consecutively. Rodriguez subsequently filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005); *see Brown v. State*, 6 S.W.3d 571, 578 (Tex. App.—Tyler 1999, pet. ref'd) ("The trial court is given wide latitude to admit or exclude evidence of extraneous offenses."). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344. We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

## III. EXTRANEOUS-OFFENSE EVIDENCE

### A. Relevance of the Extraneous-Offense Evidence

In his first issue, Rodriguez contends that the trial court erred in admitting evidence that he held E.T.'s mother at gunpoint several days after the alleged incident

transpired. Specifically, Rodriguez argues that the admission of this evidence violated Texas Rule of Evidence 402 and that Article 38.37 of the Texas Code of Criminal Procedure does not apply to this set of facts. *See* Tex. R. Evid. 402; *see also* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2012).

Relevant evidence is evidence that has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Tex. R. Evid. 401. If the evidence is not relevant, it is not admissible. *Id.* at R. 402. In deciding whether evidence is relevant, a trial court should ask whether a reasonable person, with some experience in the real world, would believe the evidence is helpful in determining the truth or falsity of any fact that is of consequence to the case. *Hernandez v. State*, 327 S.W.3d 200, 206 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (op. on reh'g)).

On appeal, Rodriguez contends that the complained-of evidence is "inherently prejudicial, confusing[,] and misleading" and that "the State failed to satisfy its burden that the extraneous offense was relevant to some issue other than the character of the defendant generally." The State responds that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense and that the complained-of evidence provides context.

In arguing that the extraneous-offense evidence is admissible, the State cites *Wyatt v. State*, which states the following:

Texas Rule of Criminal Evidence 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. But the 'other crime, wrong, or act' may have relevance 'apart from character conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity[,] or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident.' *Montgomery v. State*, 810 S.W.2d 372, 388-89 (Tex. Crim. App. 1990) (op. on reh'g). Additionally, same transaction contextual evidence may be admissible where 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others.' *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). In fact, this Court has held that 'it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.' *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

Under Rule 404(b), however, same transaction contextual evidence is admissible 'only to the extent that it is necessary to the jury's understanding of the offense.' *Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996) (quoting *England v. State*, 887 S.W.2d 902, 915 (Tex. Crim. App. 1994)). It is admissible 'only when the offense would make little or no sense without also bringing in the same transaction evidence.' *Id.*

23 S.W.3d 18, 25 (Tex. Crim. App. 2000). And, in a later case involving a similar issue about the admission of extraneous-offense evidence, the Texas Court of Criminal Appeals noted that "[t]his evidence is considered 'res gestae,' under the reasoning that events do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence."[2] *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

---

[2] In *Wesbrook*, the defendant was charged by indictment with capital murder, and the *Wesbrook* court noted that: "Evidence of the three additional killings from that evening was same transaction

As stated earlier, E.T. testified that Rodriguez sexually assaulted her while the family was parked at a rest area located in Navarro County. Approximately ten days later, E.T. made an outcry to her priest, who told her that she should tell her parents. E.T. subsequently told her parents about the incident, and E.T.'s parents confronted Rodriguez's wife a day later. And, later that evening, Rodriguez broke into E.T.'s house, confronted E.T.'s mother at gunpoint, and demanded that he be allowed to interrogate E.T. about the incident. Additionally, at this time, Rodriguez left behind a letter in which he admitted to touching E.T. but denied raping her.

Based on our review of the record, the complained-of extraneous-offense evidence would constitute same transaction contextual evidence and, thus, was relevant. *See Wesbrook*, 29 S.W.3d at 115; *Wyatt*, 23 S.W.3d at 25. This is true because the evidence pertained to the sexual assault and E.T.'s outcry. *See Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding that testimony that appellant threatened to kill the sexual-assault victim's family was admissible to show reason for delayed outcry); *Yates*, 941 S.W.2d at 366-67 (concluding that evidence probative of defendant's intent and consciousness of guilt was admissible as same-transaction evidence); *see also Gamble v. State*, No. 2-07-174-CR, 2009 Tex. App. LEXIS 2134, at *9 (Tex. App.—Fort Worth Mar. 27, 2009, pet. ref'd) (mem. op., not designated for publication) ("It is also relevant to show the reason for a complainant's acquiescence to sexual assault and a defendant's dominance over the complainant."). The record

---

contextual evidence and, as such, admissible without a limiting instruction." *Wesbrook v. State*, 29 S.W.3d 103, 114-15 (Tex. Crim. App. 2000).

reflects that the confrontation with E.T.'s mother was related to the sexual assault. *See Rogers*, 853 S.W.2d at 33; *Moreno*, 721 S.W.2d at 301. In fact, the evidence shows that Rodriguez confronted E.T.'s mother because he wanted to interrogate E.T. about the incident for unknown reasons. *See Yates*, 941 S.W.2d at 366-67. As such, we conclude that the evidence was relevant to show the jury how Rodriguez reacted violently to E.T.'s outcry, which also arguably demonstrated Rodriguez's consciousness of guilt. *See* TEX. R. EVID. 401; *see also Wesbrook*, 29 S.W.3d at 115; *Wyatt*, 23 S.W.3d at 25; *Yates*, 941 S.W.2d at 366-67.

Furthermore, Rodriguez does not complain about the admission of the letter he left at E.T.'s house. We further conclude that the complained-of extraneous-offense evidence was necessary to show how Rodriguez gained access to E.T.'s house to leave the letter. Without this evidence, the jury could have been confused as to how the letter—wherein Rodriguez admitted to touching E.T.—was left inside E.T.'s house on the night of the break-in. *See Wyatt*, 23 S.W.3d at 25; *see also Pondexter*, 942 S.W.2d at 584. Therefore, based on the foregoing, we cannot say that the trial court abused its discretion in overruling Rodriguez's relevancy objection to the extraneous-offense evidence. *See De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731; *Brown*, 6 S.W.3d at 578. Accordingly, we overrule Rodriguez's first issue.[3]

---

[3] The State asserts that the extraneous-offense evidence was also admissible under article 38.37 of the Texas Code of Criminal Procedure, which applies to the prosecution of an offense against a child under seventeen years of age and provides that:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

**B.       Texas Rule of Evidence 403**

In his second issue, Rodriguez asserts that the admission of the complained-of extraneous-offense evidence violated Texas Rule of Evidence 403 because the probative value of the evidence was substantially outweighed by "its danger of causing unfair prejudice against appellant or confusion of the issue." *See* TEX. R. EVID. 403.

Texas Rule of Evidence 403 states:   "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.*  When a Rule 403 objection is made and then overruled, the trial court necessarily conducts a balancing test by considering and overruling the objection.  *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd)).  In doing so, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to

---

(1)   the state of mind of the defendant and the child.

(2)   the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1-2 (West Supp. 2012).  However, because we have concluded that the evidence was relevant as same transaction contextual evidence, we need not address whether evidence that Rodriguez broke into E.T.'s house, confronted her mother at gunpoint, and demanded to interrogate E.T. falls within the purview of article 38.37.

confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 392; *see Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Moreover, "[i]n prosecutions for sex offenses against children, 'extraneous acts between the complainant and the defendant are usually more probative than prejudicial.'" *Brown*, 6 S.W.3d at 579 (quoting *Boutwell v. State*, 719 S.W.2d 164, 178 (Tex. Crim. App. 1985)).

This Court stated in *Yates* that: "While same-transaction evidence does not fall within the ambit of Rule 404(b), the court must nevertheless test its admissibility under Rule 403 when called upon to do so. . . . Rarely will the potential prejudice of such evidence render it inadmissible, however." 941 S.W.2d at 367. We have already concluded that the complained-of extraneous-offense evidence constitutes same transaction contextual evidence and, thus, is relevant. *See Wesbrook*, 29 S.W.3d at 115; *Wyatt*, 23 S.W.3d at 25. Furthermore, this evidence, when combined with other surrounding circumstances, including the admissions contained in the letter, made a fact of consequence—Rodriguez's touching of E.T.'s genitals—more probable.

Because same-transaction evidence is rarely excluded on account of unfair prejudice, and because we believe the trial court's determination was "within the zone

of reasonable disagreement," we cannot conclude that the trial court abused its discretion in admitting the complained-of extraneous-offense evidence. *See Boutwell*, 719 S.W.2d at 178; *Brown,* 6 S.W.3d at 579; *Yates*, 941 S.W.2d at 367; *see also* TEX. R. EVID. 403; *Casey*, 215 S.W.3d at 880. We overrule Rodriguez's second issue.

## IV. CONCLUSION

Having overruled both of Rodriguez's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed January 10, 2013
[CR25]