**Opinion issued April 20, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00837-CR

_____

**REFUGIO RICON HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1386385**

---

## MEMORANDUM OPINION

A jury convicted appellant Refugio Ricon Hernandez of the second-degree felony offense of indecency with a child and assessed punishment at 25 years in prison. *See* TEX. PENAL CODE § 21.11(a)(1), (d). Hernandez raises three issues on appeal. In his first issue, he argues that the trial court lacked jurisdiction because his

indictment was presented by the grand jury of a different district court. In his remaining issues, Hernandez contends that the trial court erred by admitting a video of an interview of the complainant and by allowing the State to ask an improper commitment question during voir dire.

We affirm the judgment of conviction.

## Background

Appellant Refugio Ricon Hernandez, also known as "Chon," attended a party at the home of his cousin, Natividad. Several other family members and friends also came to the house for the party. The adults drank beer and alcohol outside the house, while Natividad's children remained inside. Eventually, Natividad put his children to bed, and the adults continued drinking and watching a movie in the garage.

At some point during the early morning, Hernandez made his way into the house. One of Natividad's children, G.G., was in her bedroom when Hernandez entered the house. According to G.G., who was ten years old at the time of the party, Hernandez came into her bedroom. G.G. was laying down on the top bunk of a bunk bed watching television while her younger sister slept on the bottom bunk. Hernandez said that G.G.'s parents had sent him to check on her. She said "okay" and he left. After he came back into the room several more times to check on her, G.G. faced the wall with the covers over her eyes. G.G. then felt Hernandez standing behind her and "touching" her "parts." G.G. identified her "parts" as the part of her

2

body where "urine" comes out of. G.G. eventually moved and Hernandez left the room.

After Hernandez left her room, G.G. got out of bed and talked to her mom in the kitchen. G.G. told her mom that "Chon" had touched her private part. G.G.'s mother then went outside to the garage and told Natividad what G.G. had said to her. Natividad and a friend began looking for Hernandez. They found him by the garage and a fight ensued. Hernandez attempted to leave the house in his van, but he could not escape. Natividad's wife called the police, but Hernandez escaped from the house on foot before they arrived.

A grand jury returned an indictment alleging that Hernandez unlawfully engaged in sexual contact with G.G., a person younger than 17 years of age, by touching her genitals, or touching her genitals through her clothing, with the intent to arouse and gratify his sexual desire. The indictment indicated that it was filed in the 263rd Harris County District Court, but the stamp of the grand jury foreman suggests that it was the 184th District Court grand jury that returned the indictment. Hernandez did not challenge the indictment at any time prior to or during trial.

At trial, the State called several witnesses including a police officer who responded to the 911 call, G.G.'s parents, and a family friend who attended the party. Each of these witnesses testified to a similar series of events occurring on the night of the party. G.G. also testified. She described her interaction with Hernandez,

3

identified him as the man who touched her, and discussed the places on her body that he had touched her.

During his cross-examination of G.G., Hernandez's counsel mentioned a video of an interview that investigators had conducted of G.G. several weeks after the alleged touching. Through his questioning, Hernandez's counsel suggested that G.G.'s testimony at trial differed from the statement she gave during the interview. In response to this suggestion, the State sought to admit the video of the interview. The trial court admitted the video of the interview over Hernandez's objection.

A jury convicted Hernandez of indecency with a child and assessed punishment at 25 years in prison. Hernandez appealed the conviction.

**Analysis**

On appeal, Hernandez raises three issues. In his first issue, he argues that the trial court lacked jurisdiction to convict him because of errors relating to the presentment of the indictment by the grand jury. In his second and third issues, he contends that the trial court erred by admitting a video of an interview of G.G. and by allowing the State to ask an improper commitment question during voir dire.

**I. Trial court jurisdiction**

Hernandez argues that the trial court—the 263rd District Court of Harris County—lacked jurisdiction because the grand jury of a different court—the 184th District Court of Harris County—presented the indictment. Hernandez relies upon

4

the trial court's docket sheet and the grand jury foreman's stamp on the indictment to support his argument that it was the grand jury of the 184th District Court that presented the indictment. He contends that a grand jury serves a particular court, not a particular county, and therefore, when the 184th District Court's grand jury presented the indictment, it did not vest jurisdiction over the case in the 263rd District Court, and this is a jurisdictional defect that can be raised for the first time on appeal. This argument was recently considered and rejected by this court's opinion in *Davis v. State*, No. 01-16-00079-CR, 2017 WL 1281426 (Tex. App. [1st Dist.] Apr. 6, 2017, no pet. h.). "Any procedural challenge to the transfer of a case within a county is . . . determined and resolved by proper application of local rule promulgated pursuant to constitutional and statutory authority; it is not a jurisdictional defect." *Davis*, 2017 WL 1281426, at *4 (citing TEX. GOV'T CODE § 74.094; *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd)).

In this case, there was no objection regarding the indictment. Hernandez's failure to challenge the indictment or the proceedings in the 263rd District Court prior to trial constitutes a waiver of his right to challenge any procedural irregularity. *See, e.g.*, *Mosley v. State*, 354 S.W.2d 391, 393–94 (Tex. Crim. App. 1962); *Davis*, 2017 WL 1281426, at *4; *Hernandez v. State*, 327 S.W.3d 200, 204–05 (Tex.

5

App.—San Antonio 2010, pet. ref'd); *Tamez v. State*, 27 S.W.3d 668, 670–71 (Tex. App.—Waco 2000, pet. ref'd). Accordingly, we overrule his first issue.

## II.     Admissibility of evidence

In his second issue, Hernandez contends that the trial court erred by admitting into evidence a video of an interview of G.G. in which she described the indecent touching. Investigators conducted the interview prior to trial. On appeal, Hernandez contends that the video was inadmissible hearsay and that the exception to the hearsay rule provided in Code of Criminal Procedure article 38.071 did not apply because G.G. testified at trial.

"A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ." TEX. R. EVID. 103(a). A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006); *Smith v. State*, 340 S.W.3d 41, 53–54 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Smith*, 340 S.W.3d at 53–54. A trial court's evidentiary ruling will not be reversed unless that ruling falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

6

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801. Hearsay statements are not admissible unless they fall under a recognized exception to the hearsay rule. *See* TEX. R. EVID. 802.

Texas Code of Criminal Procedure article 38.071 provides an exception to the hearsay rule by allowing for the admission of a child's videotaped statement. *See Bays v. State*, 396 S.W.3d 580, 589–90 (Tex. Crim. App. 2013). Several requirements must be met in order for such a statement to be admissible, including that the child must be unavailable to testify at trial. *See id.*; *see also* TEX. CODE CRIM. PROC. art. 38.071.

The rule of optional completeness is also an exception to the hearsay rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). "If a party introduces part of an act, declaration, conversation writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." TEX. R. EVID. 107. The purpose of the rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing, and it "permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter opened up by the adverse party." *Walters*, 247 S.W.3d at 217–18. When

7

defense counsel pursues a subject that ordinarily would be outside the realm of proper comment by the prosecutor, the defendant opens the door and creates a right of reply for the State. *See Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A party who opens a door to an issue "cannot complain when the opposing party desires to go into the details of that subject." *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.).

More specifically, under Rule 107 the State is entitled to admission of a complainant's videotaped statement when (1) the defense attorney asks questions concerning some of the complainant's statements on the videotape, (2) the defense attorney's questions leave the possibility of the jury receiving a false impression from hearing only a part of the conversation, with statements taken out of context, and (3) the videotape is necessary for the conversation to be fully understood. *See Tovar*, 221 S.W.3d at 190–91; *see also Credille v. State*, 925 S.W.2d 112, 116–17 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Nevertheless, Rule 107 does not permit the introduction of a videotape when (1) it is unnecessary to show the context of the statement, such as the absence of a statement by the complainant rather than the existence of any directly contradictory statement, and (2) the admission of the videotape likely would create confusion, such as through references to extraneous-offense evidence. *Sauceda v. State*, 129 S.W.3d 116, 121–24 (Tex. Crim. App. 2004).

In this case, the State called G.G. to testify. During her direct examination, she described her interaction with Hernandez on the night of the alleged assault. She testified that Hernandez came or "peeked his head" into her room five or six times during the night. She also identified the places on her body where he had touched her, which included her vagina.

During his cross-examination, Hernandez's counsel questioned G.G. regarding statements that she made during a videotaped interview that took place after the assault. He asked her if she had told the interviewer how many times Hernandez had come into her room that night and suggested that she had not told the interviewer that he came in six times. On the video, G.G. told the interviewer that Hernandez came in "three times or five times or four times." Further, during his cross-examination, defense counsel suggested that G.G. had not told the interviewer that Hernandez had touched her vagina on the night of the assault. After referencing the video, he specifically asked G.G., "Do you remember when you displayed to the lady at the assessment center what the man supposedly did to you? Didn't you, in fact, just touch your upper thigh and you never touched your private parts?" In the recorded interview, G.G. said that Hernandez touched the "side of her middle part." She said that part of her body is used "to pee." To indicate what part of her body Hernandez touched, G.G. rubbed her inner thigh near her vagina.

9

During the State's redirect examination of G.G., it sought to offer the video of the interview to rebut the suggestion that her testimony was inconsistent with the statements she made to the interviewer. Hernandez's counsel objected to the admission of the video contending that it was statutorily inadmissible. The State argued that the video was admissible because Hernandez's counsel had opened the door and it was necessary because he had asked questions to mislead the jury.

Hernandez is correct that the videotaped statement was not admissible under Article 38.071 because G.G. was available to testify. *See Bays*, 396 S.W.3d at 589–90. But we conclude that the videotaped statement was admissible under Rule 107 because defense counsel opened the door to the video by questioning G.G. regarding some of the statements she made on the videotape. By his questions asking whether G.G. told the interviewer how many times Hernandez came into the room, defense counsel suggested to the jury that she had not indicated to the interviewer that he came in multiple times. On the video, however, G.G. told the interviewer that Hernandez came into her room at least three times during the night. Further, through his questions regarding the places on her body that G.G. indicated to the interviewer Hernandez had touched, defense counsel suggested that her testimony differed from the videotaped statement. On the video, however, G.G. clearly stated Hernandez touched her "private part," and her indication of the location on her body he touched was consistent with this statement. Thus, the trial court reasonably could have

10

determined that the questions asked by Hernandez's counsel could have left a false impression and misled the jury regarding the statements G.G. made during the interview. Therefore, the trial court reasonably could have determined that the videotape was necessary for the conversation between the interviewer and G.G. to be properly understood. *See* TEX. R. EVID. 107; *Tovar*, 221 S.W.3d at 192. We hold the trial court did not abuse its discretion by admitting G.G.'s videotaped statement. We overrule Hernandez's second issue.

### III. Voir dire question

In his third issue, Hernandez argues that the trial court erred by allowing the State to ask an improper commitment question during voir dire. We review a trial court's ruling on an improper commitment question during jury selection for an abuse of discretion. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Bravo v. State*, 471 S.W.3d 860, 871 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

A defendant has a constitutional right to a trial by an impartial jury. *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005). To safeguard this right, counsel are forbidden to ask prospective jurors questions that solicit an improper commitment to return a verdict based on some specific set of facts before they have heard the evidence. *Id*. The Court of Criminal Appeals has stated a three-part test for

ascertaining whether a question seeks an improper commitment. *Bravo*, 471 S.W.3d at 872.

First, we assess whether the question sought a commitment. *Id*. A question does so if "'one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question.'" *Id*. (quoting *Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001).

Second, if the question sought a commitment, then we must assess whether the commitment sought was an improper one, for not all commitments are improper. *Id*. A commitment question is proper if one of the possible answers would give rise to a valid challenge for cause. *Id*. If "the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard." *Id*. But if a commitment question could not give rise to a challenge for cause, then the commitment question is an improper one. *Id*.

Finally, even if the question may have given rise to a valid challenge for cause, we must ascertain whether the question included "only those facts necessary to test whether a prospective juror is challengeable for cause." *Id*. Facts beyond those necessary to sustain a challenge for cause may render an otherwise proper commitment question an improper one. *Id*.

In this appeal, Hernandez challenges the following question as an improper commitment question by the prosecutor:

> Here's a scaled question . . . . The question is: If the child says they were sexually abused, then they probably were. And No. 1 is strongly disagree. No. 2 is disagree. No. 3 is that agree. No. 4 is strongly agree.

Hernandez's counsel objected to this question, and the trial court overruled the objection. The State then asked the question again and received scaled answers from each of the potential jurors.

Our court has considered an issue similar to the one Hernandez raises. In *McDonald v. State*, the prosecutor was permitted, over objection, to pose the following question to the jury panel: "Do you feel that children likely will make up sexual abuse or unlikely?" 186 S.W.3d 86, 90 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The court rejected the contention that this was a commitment question, reasoning that the question sought "to discover whether any of the prospective jurors harbor a pre-existing bias or prejudice concerning the likelihood of children in general fabricating sexual abuse allegations" and did not ask them commit to any particular set of facts. *Id.*

The question the State posed to the jury panel in this case is similar to the one asked in *McDonald*. The State's question sought to discover any biases or prejudices rather than to commit prospective jurors to resolve or refrain from resolving any issue in the case on the basis of facts contained in the question. The question

13

therefore was not a commitment question. *See Bravo*, 471 S.W.3d at 872–74.

Accordingly, we hold that the trial court did not abuse its discretion by permitting

the question. We overrule Hernandez's third issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

14